IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| Russell Construction Co., Inc. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )  Case No. 25-851 C |
| The United States of America, | ) ) ) |
| Defendant. | ) ) |

**COMPLAINT**

1. Russell Construction Co., Inc. ("Russell") files this complaint against the United States of America, through its agency, the Wilmington District of the Army Corps of Engineers (the "Corps" or the "Government") seeking remittance of amounts memorialized in Russell's certified claim for improperly denied equitable adjustments for the delays resulting from the Government's design defects, deficiencies, and omissions under Contract No. W912PM20C0018 (the "Contract"). A true and accurate copy of Russell's Certified Claim seeking an equitable adjustment is attached hereto as **Exhibit 1** and incorporated herein by reference.

2. The Government's Project design suffered from multiple deficiencies that all required corrective work. Compounding the design problems, the Government inefficiently and inadequately administered the work, making errors in its interpretation of specifications and failing to promptly respond to RFIs and notifications of design defects. Each time Russell discovered a design defect, it timely reported the defect, omission, or conflict and promptly provided proposed resolutions and associated cost proposals before promptly performing the work to the Government's satisfaction. In

each instance, the Government conceded its deficient design and issued RFPs and Modifications, citing FAR 52.243-4 for the changed work. Each of these changes forced Russell to incur additional time and costs in the prosecution of the work. In addition to addressing the Government's design defects, Russell incurred delays and costs refuting the Government's baseless (and ultimately conceded) allegations of non-conforming work. Now, despite enjoying a completed facility, the Government refuses to compensate Russell and equitably adjust the Contract to account for the Government's documented changes. The Government has therefore breached the Contract. As a result of the Government's breaches, Russell has incurred damages as more fully described herein.

## PARTIES

3. Plaintiff, Russell, is a corporation organized and existing under the laws of the state of Iowa with its principal place of business located at 4700 E. 53rd St., Davenport, Iowa 52807-3649.

4. Defendant is the United States of America acting through the Army Corps of Engineers.

5. The Government awarded Contract No. W912PM20C0018, to Russell for the construction of the SOF Assessment and Selection Facility, located at Fort Bragg in North Carolina on July 20, 2020. A true and accurate copy of the Contract is attached hereto as **Exhibit 2.**

**JURISDICTION**

6. This Court has jurisdiction under 28 U.S.C. 1491(a) and 41 U.S.C. 7104(b)(1) because the claim is founded on an express contract with the United States and appeals the final decision of a contracting officer.

7. As of the date this complaint is filed, the contracting officer has not issued a final decision in writing in connection with this claim.

8. Russell submitted its certified claim for the relief sought in this complaint to the contracting officer on February 28, 2025.

9. Therefore, in accordance with FAR 33.211(c)(1) and (g), the claim is deemed denied and Russell is permitted to file this action. *See Rudolph and Sletten, Inc. v. United States*, 120 Fed. Cl. 137 (2015) (holding that denial, actual or deemed, authorizes an appeal and failure to issue a final decision or extend the deadline to issue a final decision during the initial 60-day period constitutes a deemed denial); *see also Aetna Gov't Health Plans Northrop*, ASBCA No. 60207 (citing *Grumman Corp.*, ASBCA No. 52263, 00-1BCA~30,676 at 151,504) (holding that the contracting officer must give a specific deadline for any request for extension of the 60-day time to issue a final decision, not a potential deadline following an act by the contractor).

10. This complaint is timely under 41 U.S.C. 7104(b)(3) because it is brought within one year of the contracting officer's deemed denial of the claim.

**FACTUAL BACKGROUND**

11. The Government awarded Contract No. W912PM20C0018 to Russell for the construction of the SOF Assessment and Selection Facility, located at Fort Bragg,

North Carolina (the "Project"), on July 20, 2020, in the original amount of $10,284,300.00.

12. The original Contract was scheduled to begin 10 days after award, with an expected duration of 730 days.

13. The Government was responsible for the Project design.

14. The Government Project design was deficient.

15. The Government design contained multiple conflicting requirements, omissions, and other defects.

16. Russell discovered these design deficiencies and conflicts during the course of the Project.

17. Russell timely reported each discovered design deficiency to the Government.

18. Russell timely submitted cost proposals to perform the corrective work associated with each design deficiency.

19. Russell timely performed the requested work to remediate the Government's deficient design and deficient administration of the Project.

20. Russell incurred costs and experienced delays associated with the changed work through no fault of its own.

21. The Government has failed to adjust the contract completion date to compensate Russell for all Government-caused delay and/or excusable delay and associated costs.

22.     Russell describes the major sources of Government-caused delay and/or excusable delay in the following paragraphs:[1]

**Submission of Original REAs and Certified Claim**

23.     Russell submitted REA005, REA006, REA007, REA008, and REA009 to the contracting officer between January and February of 2024, totaling in excess of $2.3M in costs and 415 total days of delay.

24.     The contracting officer denied each REA and outlined discrepancies in schedule logic and concurrent delay as his rationale for denying the REAs.

25.     In response, Russell engaged a scheduling consultant from Secretariat, International to analyze the Government's schedule review.

26.     Russell's schedule consultant determined that concurrent delay did exist between the five previously submitted REAs.  *See* **Exhibit 1**

27.     Russell adjusted its requests accordingly, accounting for concurrency, and converted the revised requests for equitable adjustment into a single certified claim, seeking just under $1M and 166 days of delay, submitted to the contracting officer on

---

[1] Russell submitted a certified claim for compensable delay and associated cost, then in the amount of $985,520.81 (for 166 calendar days of delay) on February 28, 2025.  Russell's certified claim sets forth the major delay events. The Government issued a letter to Russell on March 13, 2025, unilaterally declaring the claim certification defective despite admitting that the certification language comported with the requirements of the FAR.  A true and accurate copy of this letter is attached as **Exhibit 3**.  By its March 13, 2025, letter, the Government refused to issue a final decision indefinitely, pending Russell's production of general categories of documents, including additional P6 files.  On April 7, 2025, Russell responded that its certified claim was complete as submitted on February 28, 2025.  A true and accurate copy of Russell's response letter is attached hereto as **Exhibit 4.**  The contracting officer has no legal grounds to indefinitely extend its deadline, contingent on Russell meeting its demands for documents. *See Fluor Federal Solutions, LLC*, ASBCA No. 61353; *see also Fluor Federal Solutions, LLC*, ASBCA No. 61431-983.

To date, the contracting officer has failed to issue a final decision or a request for additional time to issue a final decision within the statutory 60-day period.  Following the expiration of time, he cannot now seek an extension of the deadline to issue a final decision.  *See Rudolph and Sletten, Inc. v. United States*, 120 Fed. Cl. 137 (2015) (holding that denial, actual or deemed, authorizes an appeal, and failure to issue a final decision or extend the deadline to issue a final decision during the initial 60-day period constitutes a deemed denial)

February 28, 2025. Russell's certified claim, which incorporates REAs 005-009 and their backup documentation, is incorporated as if fully set forth herein. *See* **Exhibit 1**.

**Delay Due to the Government's Design Errors in Downspout Tie-Ins (REA005)**

28. As memorialized in its REA005, submitted to the Contracting Officer on January 16, 2024, Russell identified a design error or omission related to storm drainage. A true and accurate copy of REA005 is attached hereto as **Exhibit 5** and incorporated by reference as if fully set forth herein.

29. On December 1, 2022, Russell identified a design error or omission by Zapata, the Government's Designer of Record, in contract drawings which showed only 6 of 14 downspouts tied into the underground storm drainage system.

30. On December 1, 2022, Russell documented this design deficiency in RFI 0131.

31. The Government failed to respond to RFI-0131 until January 13, 2023, 43 days later.

32. The Government delayed another 26 days before issuing RFP-0004 on February 9, 2023, seeking a cost proposal to correct the deficient design identified in RFI-0131.

33. Russell delivered its cost proposal to the Government for the corrective work on February 14, 2023, seeking $225,405 and 41 calendar days to perform the corrective work.

34. Following Russell's submission of its cost proposal, the Government further delayed correction of the design deficiencies by leveling baseless claims, which

the Government ultimately abandoned, related to proper materials Russell used in its prior installation of downspouts.

35. The Government issued Unilateral Modification No. A00002 on February 22, 2023, 82 days after Russell submitted RFI-0131 identifying the Government's design deficiency and issuing the modification under FAR 52.243-4.

36. Unilateral Modification No. A00002 unreasonably and arbitrarily awarded just $8,953 and no additional time to perform the corrective work.

37. The Government caused 19 calendar days of delay to the critical path and $134,768.52 in associated costs related to this correction of its deficient design.

38. These 19 calendar days of delay and associated costs are concurrent with other delays and costs memorialized in REA008 and REA009.

**Delay Due to Window Installation (REA006)**

39. As memorialized in REA006, submitted to the Contracting Officer on January 15, 2024, Russell identified a design error or omission related to windows and their installation. A true and accurate copy of REA006 is attached hereto as **Exhibit 6** and incorporated by reference as if fully set forth herein.

40. Russell timely completed all the submittals related to 08 51 69 10 aluminum windows by October 28, 2021.

41. The Government approved those submittals by April 15, 2021.

42. The Government approved the window submittals 518 days before their scheduled installation.

43. All the approved windows were on-site by October 1, 2021.

44. All the approved windows were on-site at least 350 days before their scheduled installation.

45. Russell included its cost in the November 6, 2021 payment application which the Government approved and paid.

46. Russell ordered all approved materials, stored them, and engaged a subcontractor to install them in accordance with the Project schedule.

47. On September 15, 2022, at the preparatory meeting for window installation, Russell's subcontractor and all materials were on-site and ready for installation to begin directly after the meeting concluded, in accordance with the Project schedule.

48. At the preparatory meeting, the Government made a baseless objection to the windows it had approved over a year earlier.

49. The Government alleged that the windows did not comply with AAMA standards.

50. Russell was forced to perform research and prove that the windows actually complied with and exceeded the applicable AAMA standards.

51. Russell proved to the Government's satisfaction that the AAMA specification its design cited was the wrong AAMA specification as detailed in RFI-127.

52. The Government admitted that the already approved windows complied with the AAMA standards and withdrew its objection.

53. The Government delayed the Project further by failing to approve the fasteners that also complied with the specifications for the windows.

54. The Government delayed the Project by 27 calendar days and delayed the critical path by 12 days to resolve its baseless objection.

55. The Government's deficient design, baseless allegation, and delay in resolving its error are the sole causes of the delays to the Project for window installation.

56. Russell incurred costs of $82,292.32 and 12 days of delay to the critical path associated with the Government's error.

**Delays Due to Soffit Louver Conflict and Mechanical Yard Fence (REA007)**

57. As memorialized in its REA007, submitted to the Contracting Officer on January 15, 2024, Russell identified a series of design errors or omissions related to fencing of the mechanical yard at the Project, soffit/louver conflicts, and various additional increases to Russell's scope of work. A true and accurate copy of REA007 is attached hereto as **Exhibit 7** and incorporated by reference as if fully set forth herein.

58. Russell timely alerted the Government to the design error involving the mechanical yard fencing at the OAC Meeting on February 4, 2021.

59. The Government acknowledged its design omission and the need for additional fencing at OAC Meeting No. 4 on March 18, 2021.

60. The Government responded to RFI-120 on August 9, 2022, concurring that a design change as detailed in RFI-120 was necessary but did not issue an RFP to correct its design errors until August 22, 2021.

61. On July 22, 2021, Russell discovered and reported to the Government another design deficiency or omission related to the constructability of soffits and louvers, later memorialized on August 5, 2022, in RFI-120, and met with the Government to confer on a solution to the design error.

62. The Government agreed with Russell's proposed correction to the Government's design error related to the soffits and louvers.

63. After meeting with the Government, Russell performed the soffit/louver correction work ahead of the RFP to preserve the schedule.

64. The Government issued RFP-0003 on August 24, 2022, which included change order work to correct its deficient design on the mechanical yard fencing and the soffit/louver scope as well as additional scope for fixtures and shower valves.

65. In RFP-0003, the Government failed to include drawings of the mechanical yard fencing.

66. The Government's failure to include drawings and specifications for the mechanical yard fencing, instead describing it by referencing fencing at another building, caused further delay in obtaining quotes for the work from subcontractors.

67. While performing the corrective work, Russell identified further design deficiencies related to shower valves and fixtures as described in RFI-116 and RFI-122.

68. The Government included these additional items described in RFI-116 and RFI-122 in RFP-0003, increasing the scope of RFP-0003.

69. Russell submitted its cost proposal in response to RFP-0003 on November 15, 2022.

70. The Government again increased the scope of the changed and corrective work in RFP-0003, demanding that Russell furnish and install A2 mirrors, and requested a revised cost proposal to reflect the additional work.

71. Russell submitted a revised cost proposal that included the additional scope on January 8, 2022, and another on April 18, 2022, to update costs and schedule impacts resulting from the Government's long delay in issuing a notice to proceed.

72. On June 8, 2023, the Government issued Unilateral Modification A00033, under FAR 52.243-4, unreasonably and arbitrarily awarding only $72,590 in costs for this additional work and no additional time.

73. Russell completed all remaining corrective and changed work memorialized in RFP-0003 by July 31, 2022.

74. Unilateral Modification A00033 fails to compensate Russell adequately for its costs and the delay to the critical path.

75. Russell's determination to proceed with the soffit/louver corrective work ahead of formal change order documentation limited the Government's delay to the critical path for that activity to 5 days.

76. The Government's failure to adequately specify mechanical yard fencing and its failure to allow Russell to proceed when Russell identified the design deficiency resulted in 44 days of delay to the critical path.

77. The 49 total days of delay to the critical path are the sole result of the Government's errors, omissions, and delays.

78. The 49 days of Government delay to the critical path are concurrent with delays more fully detailed in REA008 and REA009.

79. Russell incurred $340,121 in costs related to this delay which are not included in its demand due to the concurrent delay more fully detailed in REA008 and REA009.

**Delay Due to Mini-Split Condensing Unit Relocation (REA008)**

80. Russell discovered a design error in the placement of mini-split condensing units as more fully described in RFI-0147, submitted April 4, 2023, and in REA008, submitted January 16, 2024. A true and accurate copy of REA008 is attached hereto as **Exhibit 8** and incorporated by reference as if fully set forth herein.

81. On April 8, 2023, the Corps adopted Russell's solution to the Government's design error, ordering Russell to move three mini-splits and their attendant service utilities to conform with the unit proximity requirements.

82. On April 28, 2023, the Government issued RFP-00006, citing FAR 52.243-4, for this corrective work.

83. Russell submitted its cost proposal in response to RFP-00006 on May 12, 2023,

84. On June 30, 2023, the Government agreed to pay Russell $86,226 for this corrective work.

85. On July 12, 2023, the Government issued Unilateral Modification A0004, under FAR 52.243-4, specifically carving out compensation for delay to be determined at a later time.

86. The Government ultimately awarded no time for the corrective work described in RFP-0006.

87. The Government's deficient design and the changes necessary to mitigate it resulted in a 109-calendar day delay.

88. Some days of delay associated with REA008 occurred concurrently with delays more fully described in REA0009.

89. Accounting for concurrent delay, the Government's deficient design of the placement of the mini-splits resulted in a net 33 days of delay to the critical path.

90. Russell incurred costs of $195,852.70 as a result of the net delays associated with the mini-split condensing unit relocation.

**Delays Due to Fire Alarm Headend Relocation (REA0009)**

91. On November 22, 2022, Russell discovered a design error in the placement of fire alarm components as designed for Electrical Room 107, as more fully described in RFI-0130, submitted November 30, 2023, and REA009, submitted February 7, 2024. A true and accurate copy of REA009 is attached hereto as **Exhibit 9** and incorporated by reference as if fully set forth herein.

92. The Government conceded that its design was deficient in the placement of the fire alarm electrical panel elements and that the elements required relocation.

93. The Government conceded that its design was deficient for controlling the temperature of the rooms that housed these fire alarm electrical panel elements in accordance with building code requirements and required remediation.

94. Russell submitted a cost proposal for this corrective work on February 17, 2023, ahead of the Government issuing a formal RFP, to preserve the Project schedule.

95. On March 14, 2023, the Corps issued RFP-0005, citing FAR 52.243-4, which included moving fire alarm headend panels and additional changed work such as removing floor outlets and exhaust fans and sealing HVAC penetrations.

96. On April 19, 2023, Russell updated its cost proposal to reflect the additional work.

97. On August 10, 2023, the Government entered Unilateral Modification No. A00005, awarding just $25,418 and no additional contract time to complete the work.

98. Russell timely notified the Government of these design errors and omissions.

99. The Government took 253 days from Russell's formal notification of the design error until the Government issued its order to proceed with the corrective change work.

100. The Government's deficient design and slow approval to correct it caused 127 calendar days of delay to the Project.

101. Six days of the delay related to the activities described in REA009 overlapped with the window installation delay described more fully in REA006.

102. Accounting for the concurrent delay of six days with the work described more fully in REA006, the Government's corrective change order work delayed the Project by a net of 121 calendar days.

103. Russell incurred costs associated with the Government's delay in resolving its design error in the amount of $678,442.58, described more fully in REA009.

**Total Delay**

104. In total, and accounting for concurrency, Russell experienced at least 166 calendar days of critical path delay as a result of the above impacts.

105. Because all of the delay is compensable or excusable, Russell is entitled to an equitable adjustment to the schedule and to its costs incurred of $963,587.60 plus its

costs associated with expert consultants and attorney fees in preparing the REAs of $23,662.42.[2]

106.    On February 28, 2025, Russell submitted a certified claim seeking remittance of improperly denied costs of the Government-caused delays described herein, in the amount of $987,250.02 for 166 net calendar days of delay.

107.    By non-serialized letter, on March 14, 2025, the contracting officer refused to issue a final decision, alleging that Russell's claim certification was defective and improperly demanding additional documentation.  See **Exhibit 3**.

108.    Russell responded by letter dated April 7, 2025, that its certified claim was complete at the time of submission on February 28, 2025, and again requested that the contracting officer issue a final decision in accordance with the provisions of FAR 33.211(c)(2).  See **Exhibit 4**.

109.    The contracting officer failed to issue a final decision within 60 days of the submission of the certified claim.

## COUNT I: BREACH OF CONTRACT
### (48 CFR § 52.243-4 / FAR 52.243-4, Changes)

110.    Russell incorporates the preceding paragraphs 1-109 as if fully set forth herein.

111.    As detailed in the preceding paragraphs, the Government's design was deficient and required corrective work.

112.    The Government agreed that its design was deficient and required corrective work.

---

[2] The certified claim originally sought $21,933.31 in consultant and attorneys' fees associated with the REAs but reserved the right to supplement this figure with the final invoice from Secretariat International. Russell hereby amends its claim to include the invoice for February 2025 in the amount of $1,729.11.

113. The Government issued a series of RFPs and Modifications as detailed in the preceding paragraphs to effect a change to Russell's scope of work under the Contract.

114. The Government issued a series of RFPs and Modifications as detailed in the preceding paragraphs, citing the changes clause of the FAR (FAR52.243-4).

115. The Government failed to equitably adjust the Contract for additional time and costs associated with the Government's ordered changes.

116. In failing to equitably adjust the Contract, the Government has breached its obligations under the Contract.

117. Russell has suffered damages as a result of the Government's breaches of contract.

## COUNT II: DELAY
### (48 CFR § 52.249-10 / FAR 52.249-10, Delay)

118. Russell incorporates the preceding paragraphs 1 through 109 as if fully set forth herein.

119. As detailed in the preceding paragraphs, Russell encountered at least 166 net days of compensable delay and associated costs of $987,250.02 to identify, correct, and mitigate the Government's deficient design and the Government's delays in correcting it and effect the Government's ordered changes under FAR 52.243-4.

120. Russell did not cause or contribute to any of these delays.

121. All delays in completing the work arose from unforeseeable causes beyond the control and without the fault or negligence of Russell.

122. Russell is therefore entitled to an equitable adjustment of $987,250.02 and 166 calendar days of delay.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court grant the following relief:

1. An award of damages in the amount of $987,250.02, to compensate Russell for the improperly withheld equitable adjustment for time and costs associated with the Government's delays;

2. Interest under the Contract Disputes Act; and

3. Such other relief as the Court deems just and proper.


Dated: May 19, 2025                              Respectfully submitted,


                                                 **FOX ROTHSCHILD LLP**


                                                 _____/s/ Dirk Haire_____
                                                 Dirk Haire
                                                 A. Michelle West
                                                 **Fox Rothschild LLP**
                                                 2020 K St. NW, Suite 500
                                                 Washington, DC 20006
                                                 Phone: (202) 461-3114
                                                 Fax: (202) 461-3102
                                                 dhaire@foxrothschild.com
                                                 michellewest@foxrothschild.com
                                                 *Attorneys for Russell Construction Co., Inc.*